UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEXTUNE, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>ROBERT BUCKNER MCKINNEY, et al.,<br><br>    Defendants. | C12-1974 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendant Christopher Scott Harrison's Motions to Dismiss Pursuant to FRCP 12(b)(2) and 12(b)(6), docket nos. 10, 15.  Having considered the pleadings, and all declarations and exhibits filed in support of and opposition to the motions, the Court enters the following Order.

## I. Background

Plaintiff, nexTUNE, Inc., brings this action for misappropriation of trade secrets against EMI Music North America ("EMI") and EMI's outside counsel, Buck McKinney and Christopher Harrison.  nexTUNE alleges that Defendants improperly acquired its trade secrets through the guise of a threatened copyright lawsuit and may have shared them with nexTUNE's competitors.

ORDER - 1

nexTUNE is a company licensed and incorporated in the state of Washington that provides digital music services to individuals and companies. Amended Complaint (hereinafter "Complaint") at ¶¶ 1, 13, docket no. 18. EMI sent nexTUNE a "Cease and Desist" letter on April 24, 2012, accusing nexTUNE of copyright infringement. Id. at ¶ 8. In early July 2012, Mr. McKinney sent Michael DuKane, nexTUNE's President and CEO, a letter seeking certain information from nexTUNE in connection with EMI's claims of copyright infringement. Id. at ¶ 12. The requested information included: (1) "a detailed description of nexTUNE's digital music services," (2) "a detailed description of the manner in which nexTUNE's commercial music services are delivered to its customers," (3) "a detailed description of the functionality of the nexTUNE Media Player 1, including without limitation, a description of the manner in which content is stored on the device," and (4) "a list of all nexTUNE customers who have received EMI content, all nexTUNE sales and revenue received from EMI content, and a list of all sound recordings in nexTUNE's library, and all sound recordings used by nexTUNE over the prior 3 years." Id. at ¶ 13.

Mr. DuKane responded, agreeing to provide the requested information. Id. at ¶ 13; Exhibit A to EMI's Answer and Counterclaim, docket no. 32. His response letter to Mr. McKinney provided, in relevant part:

> [W]e will of course provide the information you requested and work diligently to resolve any issues.
>
> nexTUNE has spent more than 6 years developing unique intellectual properties with the intent to promote the use of licensed music for businesses that traditionally have engaged in unlicensed activity. As such, some of your requests are considered to be highly confidential and of a

ORDER - 2

> trade secret. I respectfully request that we agree on the confidentiality of the information we provide, especially as it relates to our technologies. We are a small company in a land of giants and our ability to compete in the marketplace of business music would be greatly diminished without such confidentiality.
>
> I would also like to make myself available to meet with you at your office in Austin this week or early next week to address this matter and to confirm an agreement of confidentiality.

Id. nexTUNE alleges that in a subsequent phone conversation, Mr. McKinney agreed to maintain nexTUNE's documents and information as confidential. Complaint at ¶ 14. Following this exchange, Mr. DuKane sent Mr. McKinney the requested information. Id. at ¶ 15.

On September 7, 2012, Mr. DuKane travelled to Austin, Texas, to meet with Mr. McKinney concerning EMI's claims of copyright infringement. When he arrived at Mr. McKinney's office, Mr. DuKane was introduced to "Chris," who Mr. McKinney explained would be assisting him with the evaluation of nexTUNE's documents. Id. at ¶ 16. During the meeting, "Chris" reviewed a copy of the documents nexTUNE had provided to Mr. McKinney. Id. at ¶ 17. At the end of the meeting, Mr. DuKane learned that "Chris's" full name was Christopher Harrison. Mr. DuKane recognized that Mr. Harrison had previously been employed by DMX, a large direct competitor of nexTUNE. Id. at ¶ 19. nexTUNE alleges that Mr. Harrison has worked for DMX and Mood Media, and is presently employed by Pandora, all direct competitors of nexTUNE. Id. at ¶¶ 22-24.

nexTUNE filed suit against EMI, Mr. McKinney, and Mr. Harrison on November 11, 2012, alleging non-infringement of EMI's copyrights under federal law and

ORDER - 3

misappropriation of trade secrets under the Washington Uniform Trade Secrets Act, RCW 19.108.010, et seq.  With respect to the second claim, nexTUNE alleges that the Defendants intentionally acquired nexTUNE's trade secrets by improper means and may have intentionally disclosed nexTUNE's trade secrets to Mr. Harrison's employers or may do so in the future.  Complaint at ¶¶ 25, 26.  nexTUNE seeks declaratory and injunctive relief prohibiting Defendants from using or disclosing its trade secrets, damages, and attorney fees and costs.  Complaint at 9.

Mr. Harrison filed two motions to dismiss the trade secret misappropriation claim against him in December 2012.  He moves to dismiss the claim for lack of personal jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(2), docket no. 10, and for failure to state a claim under FRCP 12(b)(6), docket no. 15.  The Court issued a minute order on January 29, 2013, allowing for additional discovery on the issue of jurisdiction.  Docket no. 25.

The Court will address Mr. Harrison's motion to dismiss for lack of personal jurisdiction first.  If the Court lacks jurisdiction, it does not have authority to decide the motion to dismiss under Rule 12(b)(6).  See, e.g., County of Nassau v. New York, 724 F.Supp.2d 295, 300 (E.D. N.Y. 2010).

## II.   Standard

In response to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to establish that personal jurisdiction exists.  See Lee v. City of Los Angeles, 250 F.3d 668, 692 (9th Cir. 2001).  Where, as here, a district court rules on a defendant's motion to dismiss under FRCP 12(b)(2) without holding an evidentiary

ORDER - 4

hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).  In deciding whether a prima facie case has been made, the "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor."  AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).  However, only the "well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."  Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

### III.   Discussion

In the present case, nexTUNE concedes that general jurisdiction is lacking, but argues that the Court has specific jurisdiction over the Defendants.  In order for a plaintiff to establish specific jurisdiction over a non-resident defendant, it must establish that: (1) the defendant purposefully directed his activities at the form; (2) plaintiff's claims arise out of the forum-related activities; and (3) the exercise of jurisdiction over the defendant is reasonable.  Brayton Purcell LLP v. Recordon & Recordon, 660 F.3d 1124, 1128 (9th Cir. 2010).  The plaintiff bears the burden of satisfying the first two elements and if it fails to establish either of them, specific jurisdiction over the nonresident defendant does not exist.  Schwartzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citations omitted).  If the plaintiff satisfies the first two elements, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would not be reasonable.  Id. (citations and quotations omitted).

ORDER - 5

1. **Purposeful Direction**

In order to satisfy the purposeful-direction element in cases in which tortuous conduct is alleged by the plaintiff, the Ninth Circuit requires that the actions of the nonresident defendant be purposefully directed at the forum based on "an effects test that focuses on the forum in which the defendant's actions were felt, whether or not the actions occurred within the forum." Marvix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1228 (9th Cir. 2011). This "effects test" is based on the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984), and requires that the nonresident defendant (1) commit an intentional act, (2) that was expressly aimed at the forum state, and (3) that caused harm that the nonresident defendant knew would likely be suffered in the forum state. Rio Properties Inc. v. Rio International Interlink, 284 F.3d 1007, 1019-20 (9th Cir. 2002) (citing Calder, 465 U.S. at 788-890).

In order to satisfy the first element of the effects test, the plaintiff must establish that the defendant committed an intentional act. Plaintiff argues that Mr. Harrison intentionally acquired nexTUNE's trade secrets and that he "may have" disclosed the trade secrets to DMX, Mood Media, or Pandora. Plaintiff supports this argument with a citation to Mr. Harrison's deposition testimony that he entered into a fee sharing agreement with Mr. McKinney in which they agreed to split fees earned through joint prosecution of copyright infringement claims on behalf of clients such as EMI. Plaintiff's Supplemental Opposition to Defendant's Motion to Dismiss at 4, docket no. 35. The Court concludes that this is insufficient to demonstrate that Mr. Harrison intentionally acquired nexTUNE's trade secrets.

ORDER - 6

The Complaint alleges that Mr. McKinney requested certain information from nexTUNE, that nexTUNE informed Mr. McKinney that the information contained trade secrets, and that Mr. McKinney agreed to keep the information confidential. The Complaint does not allege that Mr. Harrison requested any information from nexTUNE or that he otherwise improperly acquired information from nexTUNE. It appears that Mr. Harrison reviewed documents that were provided to him by either EMI or Mr. McKinney in connection with his representation of EMI in relation to allegations of copyright infringement against nexTUNE. These facts do not establish that Mr. Harrison "intentionally acquired nexTUNE's trade secrets."

nexTUNE argues that for purposes of a motion to dismiss for lack of personal jurisdiction, it is sufficient for a plaintiff to allege that the defendant committed an intentional act because the court must presume that the facts set forth by the plaintiff can be proven. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000). While this proposition is generally true, this Court is not required to credit mere conclusory allegations. Wenz, 55 F.3d 1 at 1505. Here, viewing the Complaint in the light most favorable to nexTUNE and assuming that all facts set forth in the Complaint can be proven, the Complaint does not support the inference that Mr. Harrison "intentionally acquired" nexTUNE's trade secrets or engaged in any other intentional act to support jurisdiction.

However, assuming for purposes of argument only, that nexTUNE has met its burden to demonstrated that Mr. Harrison committed an intentional act, nexTUNE fails to show that Mr. Harrison's intentional acquisition of nexTUNE's trade secrets was

ORDER - 7

"expressly aimed at the forum state." The second element of the effects test is "satisfied, and specific jurisdiction exists, when a defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 675 (9th Cir. 2012). The Ninth Circuit has clarified, however, that foreign acts with foreseeable effects in the forum state do not always give rise to personal jurisdiction. Bancroft & Masters, 223 F.2d at 1087. "Instead, . . . 'something more' is required to establish that the defendant expressly aimed its conduct at the forum." Medinah Mining, Inc. v. Amunategui, 237 F.Supp.2d 1132, 1137 (D. Nev. 2002). In order for the "express aiming" element of the effects test to be satisfied, the defendant must know that the plaintiff is a resident of the forum state and that the harm resulting from the intentional act will be suffered in the forum state. Bancroft & Masters, 223 F.2d at 1087. Thus, the question is whether Mr. Harrison knew that nexTUNE's principal place of business was in Washington, purposefully targeted nexTUNE in Washington, and knew that harm in Washington was reasonably foreseeable. nexTUNE has failed to meet its burden of proof on the express aiming element of the effects test.

nexTUNE argues that the Court should conclude Mr. Harrison knew that nexTUNE was located in Washington because he had, several years earlier, received an e-mail from Mr. DuKane which included a signature block with a Redmond address. Plaintiff's Supplemental Opposition to Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(2) at 5, docket no 35. This argument is not persuasive. A single e-mail received from an out-of-state plaintiff years prior to the events giving rise to litigation is not

ORDER - 8

sufficient to demonstrate that the defendant targeted "a plaintiff whom the defendant knows to be a resident of the forum state." <u>Washington Shoe Co.</u>, 704 F.3d at 675. If this was sufficient to support a finding that Mr. Harrison knew that nexTUNE was a Washington resident, every unsolicited e-mail could be a potential basis for concluding that the recipient knew the location of the sender's business for purposes of personal jurisdiction. Here, nexTUNE has failed to demonstrate that the single e-mail from Mr. DuKane to Mr. Harrison was part of an ongoing business relationship or otherwise resulted in any type of personal relationship through which Mr. Harrison might reasonably be imputed to have knowledge of nexTUNE's business residence.

nexTUNE also claims that Mr. Harrison knew that nexTUNE was located in Washington because the Defendants sent a letter addressed to nexTUNE in Redmond, Washington," requesting information containing trade secrets. Plaintiff's Supplemental Opposition to Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(2) at 5. This argument is inconsistent with the Complaint and belied by Mr. Harrison's declaration. <u>See</u> Complaint at ¶¶ 12-13. Mr. Harrison submitted a declaration in support of his motion to dismiss stating:

> I first met with nexTUNE's Chairman and President Michael Dukane on September 7, 2012 in Austin, Texas. Prior to this meeting, as a legal representative of EMI I had not telephoned or directed correspondence to nexTune. As a legal representative of EMI, the September 7, 2012 meeting in Austin, Texas was the only contact that I had with nexTUNE.

Harrison Decl. at 2, docket no. 11. Plaintiff has failed to demonstrate that Mr. Harrison targeted a company that he knew to be a resident of the forum state.

ORDER - 9

1    nexTUNE also fails to meet the third element of the effects test with respect to Mr.
2 Harrison.  This element requires the plaintiff to demonstrate that an intentional act
3 "caused harm that the nonresident defendant knew would likely be suffered in the forum
4 state." Rio Properties, 284 F.3d at 1019-20.  The third prong "is satisfied when [a]
5 defendant's intentional act has foreseeable effects in the forum." Brayton Purcell LLP,
6 606 F.3d 1131.  nexTUNE has not demonstrated that Mr. Harrison's review of
7 nexTUNE's documents caused harm in Washington.  The Complaint alleges that Mr.
8 Harrison "may have" used or disclosed nexTUNE's trade secrets.  Complaint at ¶¶ 26-27.
9 These allegations are nothing more than speculation and do not support the conclusion
10 that any harm occurred in Washington.
11    The Court concludes that nexTUNE has failed to meet its burden to demonstrate
12 that Mr. Harrison's conduct was purposefully directed at the forum state.   Plaintiff has
13 alleged no facts demonstrating that Mr. Harrison was involved in soliciting the
14 documents from nexTUNE for EMI or otherwise took part in any communication with
15 nexTUNE other than a single face to face meeting with Mr. DuKane in Austin, Texas.
16 Apparently, Mr. Harrison was engaged as co-counsel by EMI to assist with the
17 prosecution of alleged copyright infringement by nexTUNE and remained in that role
18 until November 2012, when he accepted an offer of employment in California.  Answer
19 and Counterclaim at 11; Harrison Decl. at 2.  The facts pleaded are insufficient to
20 establish that Mr. Harrison "engaged in wrongful conduct targeted at the plaintiff whom
21 defendant [knew] to be a resident of the forum state," Dole Food Co., Inc. v. Watts, 303
22
23

ORDER - 10

F.3d 1104, 1111 (9th Cir. 2002), and that the alleged wrongful conduct resulted in harm being suffered in the state of Washington.  Rio Properties, 284 F.3d at 1019-20.

nexTUNE argues that Spank! Music and Sound Design Inc. v. Hanke, et al., 2005 WL 300390 (N.D. Ill. 2005) supports a finding of personal jurisdiction.  That case is not helpful because the court concluded that the defendants had sufficient contacts with the forum state to support personal jurisdiction.  There, the plaintiff, a company located in Chicago, Illinois, opened a satellite office in California.  Id., at *1.  Defendants were hired to work in the California office.  Several years later, plaintiff sued defendants for soliciting plaintiff's clients, misappropriating plaintiff's confidential and proprietary information, and leaving plaintiff with various debts.  Id.  Defendants argued that personal jurisdiction was lacking in Illinois.  Id.

In response, plaintiff argued that jurisdiction was proper because the defendants' contact with the Chicago headquarters provided sufficient minimum contacts to support the exercise of jurisdiction in Illinois.[1]  Further, plaintiff contended that jurisdiction was

---

[1] Defendants' contacts with the Chicago office included the following:

> Braverman was interviewed in Chicago and was extended an offer from Spank's Chicago office.  Further, Braverman traveled to Chicago at Spank's expense to undergo five days of training and received paychecks and benefits issued from Spank's Illinois headquarters.  Spank asserts Jones traveled to Chicago at Spank's expense to undergo four days of training at Spank's headquarters.  In addition, Jones traveled to Illinois on Spank business on at least three occasions, and her paychecks and benefits were issued from Spank's Illinois headquarters.  Spank indicates both Jones and Braverman reported to superiors in the Chicago office on a daily or weekly basis, communicated via phone, fax and e-mail with Chicago personnel, and regularly submitted expense reports, sales materials, purchase orders, job estimates, vendor invoices, client contracts, session sheets and other materials to Spank's Chicago office.  Spank emphasizes neither defendant claims she did not know she was employed by an Illinois company or that she could not

ORDER - 11

appropriate under the "effects doctrine." Id., at *2.  The Seventh Circuit concluded that "defendants have sufficient minimum contacts with Illinois to satisfy personal jurisdiction requirements." Id., at *3.  Although the Court noted that the plaintiffs argued that jurisdiction was proper under the "effects doctrine," it does not appear that the Court relied on the effects test to establish personal jurisdiction.

The Court concludes that Spank! Music and Sound Design is distinguishable.  Here, nexTUNE has not demonstrated that Mr. Harrison had any contacts with the forum state.  In addition, nexTUNE has not demonstrated that Mr. Harrison knew that nexTUNE was located in the forum state.  Committing a "foreign act with foreseeable effects in the forum state" is insufficient to support personal jurisdiction in the Ninth Circuit.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1157-58 (9th Cir. 2009).

Plaintiff argues, in essence, that Mr. Harrison's review of documents that nexTUNE voluntarily provided to Mr. McKinney/EMI in an attempt to resolve EMI's copyright infringement claims constitutes intentional misappropriation and that jurisdiction is proper in Washington because nexTUNE is located in Washington.  This is insufficient to support the exercise of specific jurisdiction over Mr. Harrison.  Because Plaintiff has failed to make a prima facie showing that Mr. Harrison purposefully directed his activities at the form, the Court declines to address the second and third elements of the test for specific jurisdiction.

---

readily anticipate that any complaints regarding her employment would originate in Illinois.

Id. at *2.

1   The Court GRANTS the motion to dismiss for lack of personal jurisdiction under

2   FRCP 12(b)(2), docket no 10.[2]

3   Dated this 29th day of May, 2013.

*Thomas S. Zilly*

THOMAS S. ZILLY
United States District Judge

---

[2] Because the Court grants Defendant Harrison's motion to dismiss for lack of personal jurisdiction, it is unnecessary to address his alternate motion to dismiss for failure to state a claim under FRCP 12(b)(6), docket no. 15.  That motion is STRICKEN as moot.

ORDER - 13